**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**EARL WILKES,**

                      **Plaintiff,**                  **6:13-cv-856
                                                                       (GLS)**

        v.

**CAROLYN W. COLVIN,** as
Commissioner of the Social
Security Administration,

                      **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter W. Antonowicz | PETER W. ANTONOWICZ, ESQ. |
| 148 West Dominick Street | |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | DAVID L. BROWN |
| United States Attorney | JOSHUA L. KERSHNER |
| 100 South Clinton Street | Special Assistant U.S. Attorneys |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Earl Wilkes challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Wilkes' arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On November 25, 2008, Wilkes filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2001. (Tr.[1] at 111, 220-26.) After his application was denied, (*id.* at 132-35), Wilkes requested a hearing before an Administrative Law Judge (ALJ), which was held on May 21, 2010, (*id.* at 78-110). On July 13, 2010, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 112-26.) At Wilkes' request, the Appeals Council remanded the decision to the ALJ to further evaluate Wilkes' mental impairment and give further consideration to his RFC, as well as obtain testimony from a vocational expert (VE). (*Id.* at 127-29, 171.) A second administrative hearing was

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

held on February 3, 2012 and VE testimony was taken.  (*Id.* at 42-77.)  On April 12, 2012, the ALJ issued an unfavorable decision again denying the benefits.  (*Id.* at 21-41.)  That decision became the final decision of the Commissioner when the Appeals Council denied Wilkes' request for review.  (*Id*. at 1-7.)

Wilkes commenced the present action by filing his complaint on July 19, 2013 wherein he sought review of the Commissioner's determination.  (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 15, 17.)

### III.  **Contentions**

Wilkes contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 15 at 20-23.)  Specifically, Wilkes claims that: (1) the residual functional capacity (RFC) determination is not supported by substantial evidence; (2) the ALJ improperly weighed the medical opinions of record; and (3) the ALJ erred in evaluating Wilkes' subjective complaints.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 17 at 5-17.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 15 at 3-12; Dkt. No. 17 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Wilkes first argues that the ALJ's determination that he retains the RFC to perform light, unskilled, routine work, involving only one to two step tasks is not supported by the evidence. (Dkt. No. 15 at 20-21.) According to Wilkes, his deficits in attention and concentration, due to his mental

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

impairments as well as pain, cause further limitations in his functional capacity. (*Id.*) The Commissioner counters, and the court agrees, that the mental status examinations of record, as well as the opinion of nonexamining medical consultant C. Butensky, support the ALJ's RFC determination. (Dkt. No. 17 at 5-10.)

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, as the ALJ noted, in March 2009, Wilkes' attention and concentration and memory were intact on examination by consulting physician Kristen Barry. (Tr. at 30, 489-93.) Thereafter, nonexamining medical consultant Butensky opined that Wilkes suffers mild difficulties in

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

concentration, persistence, and pace and can perform a job involving simple tasks in a low stress environment. (*Id.* at 513, 516.) Additionally, in December 2011, Zachary Forbes, a social worker intern at Upstate Cerebral Palsy Community Health and Behavioral Services, examined Wilkes and noted that his attention and concentration were good. (*Id.* at 578-81.)

With respect to Wilkes' pain, treating nurse practitioner Debra Dermady's treatment records indicate that, although Wilkes complained of low back pain, with medication he was able to "maintain[] function and quality of life." (*Id.* at 540-43, 557-58.) In May 2009, Dermady noted that Wilkes' pain medication had been working well and his symptoms were generally stable, but he had experienced an increase of symptoms after stripping and waxing his floors the day before his appointment. (*Id.* at 541.) On the other hand, in March 2009, Wilkes reported to consulting examiner Kalyani Ganesh that medication helps his pain to some extent, but he could no longer perform any household chores and needs help with his socks and shoes. (*Id.* at 494.) After examining Wilkes, Dr. Ganesh opined that Wilkes suffered moderate limitations in his ability to sit, stand, walk, climb, lift, carry, push, pull, and bend. (*Id.* at 494-96.) In addition to Dr. Ganesh's

6

opinion, the ALJ noted that Wilkes failed to follow through on physical therapy and was discharged after attending only one session, and gave conflicting reports to his treating sources regarding caring for his ailing wife. (*Id.* at 31, 544-45, 580, 590.) The ALJ also noted that, although treating physician Tatyana Misyulya found some positive clinical findings when she first examined Wilkes in February 2010, the remainder of her treatment notes contain few objective findings, and, on his most recent examination in December 2011, Dr. Misyulya found that Wilkes had tenderness in the right lumbar area, but straight leg raising was negative bilaterally and sensation and muscle strength was intact. (*Id.* at 31-32, 550-51, 588, 590, 592, 594, 598-99.)

Based on the foregoing, although there is evidence that Wilkes suffers limitations as a result of his back pain and depression,[4] there is substantial evidence supporting the ALJ's determination that Wilkes can perform light,[5] unskilled,[6] routine work, involving one- or two-step tasks.

---

[4] Wilkes points to his own complaints of decreased concentration, energy, and physical activity, and anxiety in large groups, as well as the opinion of Dr. Misyulya that Wilkes suffers difficulties in concentration, persistence and pace resulting in frequent failure to complete tasks, a pervasive loss of interest in almost all activities, and easy distractibility. (Dkt. No. 15 at 20-21.) Wilkes' contentions regarding the ALJ's treatment of Dr. Misyulya's opinion and his own subjective complaints are discussed below. *See infra* Part VI.B-C.

[5] Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 416.967(b). Further, "the full range of light work

(*Id.* at 30, 32); *see Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant]'s view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*").

B. **Opinion Evidence**

Next, Wilkes contends that the ALJ erred in crediting the opinions of the consulting examining and nonexamining physicians over those of his treating physicians. (Dkt. No. 15 at 21-22.) In addition, Wilkes asserts that the relevant regulatory factors for weighing opinion evidence do not support the weight given to Dr. Ganesh's opinion. (*Id.* at 22.) Further, Wilkes argues that the opinions of the consulting physicians do not support the ALJ's RFC determination. (*Id.*) The court disagrees.

Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

---

requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, *6 (1983).

[6] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).

evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

In this case, in March 2010, Dr. Misyulya opined that Wilkes could lift and carry fifteen pounds occasionally and five pounds frequently, stand or walk for less than two hours in a workday, and sit for less than two hours of the workday, and occasionally climb, balance, kneel, reach, and handle.

(Tr. at 552-53.)  According to Dr. Misyulya, Wilkes could never crouch, crawl, or stoop, but could frequently finger, and unlimitedly feel.  (*Id.* at 553.)  Further, Wilkes would be off task twenty-five percent of the workday due to pain.  (*Id.*)  Dr. Misyulya also completed an Affective Disorder Questionnaire, and opined that Wilkes suffered a loss of interest in almost all activities, appetite disturbance, sleep disturbance, decreased energy, difficulty concentrating, and easy distractibility.  (*Id.* at 554.)  Dr. Misyulya concluded that Wilkes' difficulties in concentration, persistence, and pace result in frequent failure to complete tasks.  (*Id.*)[7]

The ALJ afforded "little weight" to the opinions of Dr. Misyulya because they were not supported by the minimal clinical findings in her treatment notes and were inconsistent with the longitudinal medical evidence of record.  (*Id.* at 33, 540-43, 550-51, 557-58, 588, 590, 592, 594, 598-99); *see* 20 C.F.R. § 416.927(c)(3)-(4).  The ALJ also considered that Dr. Misyulya's opinion regarding Wilkes' physical functioning was rendered only one month after she began treating Wilkes.  (Tr. at 33); *see* 20 C.F.R. § 416.927(c)(2).  The ALJ noted that Dr. Misyulya's treatment records

---

[7] Dr. Misyulya first completed the Affective disorder Questionnaire in March 2010.  (Tr. at 554.)  Subsequently, in January 2012, she confirmed that Wilkes' condition and limitations remained the same.  (*Id.* at 586.)

10

contain no positive clinical findings with respect to Wilkes' mental status. (Tr. at 31-33); *see* 20 C.F.R. § 416.927(c)(3). Rather, on her initial examination in February 2010, one month before she first completed the Affective Disorder Questionnaire, Dr. Misyulya found Wilkes to be in no acute distress, pleasant, friendly, awake, alert, and fully oriented. (Tr. at 550.) Thereafter, in July 2010, she noted that Wilkes was in no visible distress, speaking fluently, smiling, and answering questions properly, with good eye contact. (*Id.* at 598.) As it is clear that he properly applied section 416.927(c), and his reasons for doing so are supported by substantial evidence, the ALJ did not err in discounting the opinion of Dr. Misyulya. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

The ALJ also gave "little weight" to the opinion of nurse practitioner Dermady because she is not an acceptable medical source and her opinion that pain would cause Wilkes' to be off-task twenty-five percent of the workday was inconsistent with her own notation that Wilkes failed to follow through with physical therapy. (Tr. at 33, 573.) Again the court finds that the ALJ's assessment was legally sound and supported by substantial evidence. *See* SSR 06-03p, 71 Fed. Reg. at 45,594-95; *see* 20 C.F.R.

11

§ 416.913(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008).

Turning to the opinion of Dr. Ganesh, Wilkes argues that the ALJ did not acknowledge the severity of the limitations she found, failed to note that Dr. Ganesh is not a board certified orthopedic specialist, and erred in relying on her opinion because it did not define the term "moderate limitation." (Dkt. No. 15 at 22.) On examination by Dr. Ganesh, Wilkes' gait was normal and he used no assistive device, needed no help changing for the exam or getting on and off of the examination table, and was able to rise from a chair without difficulty. (Tr. at 495.) However, Wilkes could not walk on his heels and toes. (*Id.*) Wilkes' fine motor activity and upper extremity examination was normal, but he had reduced range of motion in his cervical spine. (*Id.*) Wilkes had full flexion and extension in his lumbar spine, but reduced lateral flexion and rotary movements. (*Id.*) Wilkes also had reduced range of motion of his hips and knees, but full range of motion of his ankles, no sensory abnormalities, no muscle atrophy, and physiologic and equal reflexes. (*Id.*)

The ALJ considered Dr. Ganesh's report and afforded her opinion "weight" because of her programmatic expertise and the relative

consistency of her opinion with the longitudinal medical evidence. (*Id.* at 32-33.) As Dr Ganesh's ultimate diagnosis is well supported by her extensive examination and is not in any way conclusory, the ALJ did not err in relying on her opinion to determine Wilkes' RFC despite her use of the term "moderate." *See Kinder v. Colvin*, No. 13-CV-06368, 2014 WL 4184820, at *7 (W.D.N.Y. Aug. 21, 2014); *Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4 n.6 (N.D.N.Y. May 27, 2008). Further, as Dr. Ganesh's opinion is consistent with the longitudinal medical evidence as well as Wilkes' treatment history, the ALJ did not err in relying on it, as opposed to the opinions of Wilkes' treating sources, or in failing to methodically discuss each individual factor under the regulations. *See supra* Part VI.A.; *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Florez v. Apfel*, No. CV 97-3052, 1998 WL 760334, at *6-7 (E.D.N.Y. Aug. 31, 1998) ("Given that [the medical expert's] opinions are supported by the record, and [the treating physician's] opinion that the [claimant] was disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive.").

13

Accordingly, the court finds that the ALJ properly assessed the opinion of Dr. Ganesh.

## C. <u>Credibility Assessment</u>

Finally, Wilkes claims that the ALJ improperly evaluated his credibility. (Dkt. No. 15 at 23-25.) Specifically, Wilkes argues that the ALJ substituted his own opinion for that of competent medical opinion when discounting Wilkes' subjective complaints. (*Id.* at 24.) Additionally, Wilkes argues that the ALJ made factual errors and failed to obtain an explanation for Wilkes' poor work record before relying on it to discount his credibility. (*Id.*) Again, the court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the

14

weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that Wilkes' "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible." (Tr. at 31.) In making this determination, the ALJ considered Wilkes' treatment records, his failure to comply with prescribed treatment, his inconsistent statements to treatment providers, and the medical opinions of record. (*Id.* at 31-33.) In particular, the ALJ noted that Wilkes received conservative treatment for his low back pain, failed to attend physical therapy sessions, had a poor work record, failed to follow up with vocational rehabilitation services offered to him, and made inconsistent

statements regarding caring for his ailing wife.[8] (*Id.* at 27-33.)

Wilkes argues that the ALJ erred in considering medical findings when discounting his testimony regarding the functional effects of his symptoms. (Dkt. No. 15 at 24-25.) On the contrary, "[o]bjective medical evidence . . . is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms . . . may have on [his] ability to work." 20 C.F.R. § 416.929(c)(2). In keeping with the regulations, in addition to the objective medical evidence, the Commissioner must "consider all of the evidence presented, including information about [a claimant's] prior work record, . . . statements about [his] symptoms, evidence submitted by [his] treating or nontreating source, and observations by [Social Security Administration's] employees and other persons." *Id.* § 416.929(c)(3). Here, the ALJ did just that. (Tr. at 26-33.)

Wilkes also argues that the ALJ mistakenly concluded that he failed to follow proscribed treatment, namely physical therapy, and failed to seek

---

[8] In June 2011, Wilkes informed Dr. Misyulya that he was caring for his ailing wife, who had recently suffered a major stroke. (Tr. at 590.) However, in December 2011, Wilkes reported to social worker intern Forbes that his wife "left him about six months ago" because she could not "understand his severity of pain and was tired of not doing anything." (*Id.* at 580.)

professional assistance for his sleep disorder. (Dkt. No. 15 at 24.) However, the ALJ accurately described Wilkes' discharge from physical therapy for failure to attend, and noted Wilkes' explanation that aqua therapy made his back worse. (Tr. at 27, 31, 63, 544-47.) It was certainly reasonable for the ALJ to conclude that, if Wilkes' pain was as severe as alleged, he would have attended more than one physical therapy session before throwing in the towel, against the recommendation of treating nurse practitioner Dermady. (*Id.* at 558); *see* SSR 96-7p, 61 Fed. Reg. at 34,487 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Moreover, physical therapy records indicate that Wilkes failed to attend his first two appointments, ostensibly before he knew what pain the treatment would cause. (Tr. at 544.)

With respect to his sleep disorder, the ALJ stated that "the fact that [Wilkes] has never sought professional assistance for a sleep disorder detracts from his credibility." (*Id.* at 31.) However, Dr. Misyulya's treatment records indicate that Wilkes was seen in a sleep clinic in December 2010

17

but no abnormalities were found, except for poor sleep hygiene. (*Id.* at 592.) Although it appears that the ALJ misstated the facts in this regard, Dr. Misyulya's treatment note supports the ALJ's conclusion that Wilkes complaints regarding the severity of his sleep impairment were not credible. Moreover, as noted by the ALJ, Wilkes only received conservative treatment for his impairments, and, in fact, Wilkes declined nurse practitioner Dermady's offer of epidural injections or surgical evaluation. (*Id.* at 27, 445-46, 543.) Further, Wilkes reported to Dr. Misyulya that his insomnia improved with medication. (*Id.* at 588, 590, 598.) Accordingly, the ALJ's conclusion that the rigor of Wilkes' treatment detracted from his credibility is supported by substantial evidence, and remand is not required due to the ALJ's misstatement. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 82 n.26 (N.D.N.Y. 2005) (holding that an ALJ's incorrect rendition of facts in the record is nothing more than harmless error where his credibility assessment is amply supported by other substantial evidence).

Lastly, Wilkes submits that the ALJ erred in discounting his testimony due to his poor work record, without "engag[ing] in any effort to determine why the record appeared to be poor." (Dkt. No. 15 at 24.) Contrary to

18

Wilkes assertion, at the administrative hearing, the ALJ inquired with Wilkes about an explanation for his poor work history prior to his back injury, the alleged cause of his inability to work. (Tr. at 86.) Wilkes responded that he did not have an explanation, but that it was "hard for [him] to get a job." (*Id.*) As work history is "one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony," *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998), the ALJ did not err in including such consideration in his analysis here. (Tr. at 31.)

**D.** **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Wilkes' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court